**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARLEYSVILLE INSURANCE COMPANY OF NEW YORK<br><br>Plaintiff,<br>vs.<br><br>12 EAST 88TH LLC and SIMON BARON CONSTRUCTION LLC<br><br>Defendants. | Civil Action No.: |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff HARLEYSVILLE INSURANCE COMPANY OF NEW YORK ("Harleysville"), by and through its undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. In this action, Harleysville seeks a declaration that under the prevailing facts the applicable insurance policy does not cover 12 EAST 88TH LLC's and SIMON BARON CONSTRUCTION LLC's (collectively, the "Insureds") claim for soft costs purportedly arising out of a certain water loss at the insured premises.

2. Harleysville issued a builder's risk insurance policy to the Insureds bearing Policy Number CIM00000077549V, effective May 4, 2015 to May 4, 2017, covering the construction project at the property located at 12 East 88th Street, New York, New York (the "Premises"), subject to all of the terms, conditions and exclusions contained therein (the "Builder's Risk Policy"). A true and correct certified copy of the Builder's Risk Policy in effect on March 5, 2017 is attached hereto and incorporated herein by reference as **Exhibit 1.**

3. It is undisputed by Harleysville that the Builder's Risk Policy affords coverage for the property damage to the Premises resulting from a water loss that occurred on or about March 5, 2017. To wit, the parties have mutually agreed as to the scope and value of the property damage and Harleysville has issued payment in full to the Insureds for the property damage portion of the loss.

4. Despite the existence of covered property damage, the limited construction project records and documentation provided by the Insureds do not establish any delay in the projected completion of overall construction operations as a direct result of the subject water loss.

5. Absent any delay in the projected completion of overall construction operations directly caused by covered property damage, the coverage afforded under the Builder's Risk Policy for "Soft Costs" is not triggered.

6. Harleysville seeks a declaration from this Court that the subject water loss does not give rise any "Soft Costs" covered under the Builder's Risk Policy.

## THE PARTIES

7. Plaintiff Harleysville is an insurance company incorporated in and with its principal place of business in Pennsylvania. Harleysville is a wholly owned subsidiary of Nationwide Mutual Insurance Company.

8. Defendant 12 East 88th LLC ("12 East 88th") is a Delaware limited liability company, formed as a single purpose entity that owns the real property and building located at 12 East 88th Street, New York, New York, 10128.

9. Defendant Simon Baron Construction LLC ("Simon Barron") is a New York limited liability company with its principal place of business located at 757 Third Avenue, Suite 1701, New York, New York, 10017.

## STATEMENT OF JURISDICTION

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in the United Stated District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391, because the Defendants and the location of the Premises for which coverage is sought under the Builder's Risk Policy are located within this District.

## FACTUAL BACKGROUND

### Purchase and Redevelopment of the 12 East 88th Street Property

12. The Premises consists of a thirteen story, pre-war building designed by architect Rosario Candela located in the Carnegie Hill neighborhood of New York City.

13. Upon information and belief, 12 East 88th purchased the Premises in 2014 for a reported price of one-hundred and five-million dollars ($105,000,000).

14. On or about May 14, 2015, 12 East 88th entered into a construction management agreement with Simon Baron for a redevelopment project to convert the Premises from an apartment-style building to a luxury condominium building.

15. Upon information and belief, the project went through multiple iterations, ultimately arriving at a plan to consolidate and merge approximately 54 of the 66 existing apartment units into 25 luxury condominium units.

16. Upon information and belief, the approximately 12 remaining apartment units not part of the redevelopment project at the Premise were rent controlled apartment units and ultimately sold to an unknown third-party in a package deal.

17. According to the initial project schedule prepared by Simon Baron dated July 27, 2015, the contemplated construction project began on or about April 13, 2015 and was to be completed on or about November 29, 2016, an estimated total construction period of 597 calendar days.

**The Builder's Risk Policy**

18. Harleysville issued a builder's risk insurance policy to the Insureds bearing Policy Number CIM00000077549V, effective May 4, 2015 to May 4, 2017, covering the construction project at the property located at 12 East 88th Street, New York, New York (the "Premises") subject to all of the terms, conditions and exclusions contained therein (the "Builder's Risk Policy").

19. The Builder's Risk Policy includes a "Soft Costs" Endorsement, Form CM-7183 (Ed. 1-01), which provides in relevant part as follows:

> **"Soft Costs"**
>
> 1. We will pay for the actual and necessary "Soft Costs" expense you sustain as a direct result of delay in the projected completion of "construction operations." The delay must be directly caused by "loss" or damage covered under the Builders Risk Coverage Form.
>
>    This coverage only applies when a Limit of Insurance, applicable to "Soft Costs," is shown in the "Declarations."
>
>    We will cover those "Soft Cost(s)" Items indicated in the Schedule above with an 'x'.
>
>    We will pay your "Soft Costs" for the period of time reasonably required to repair or replace the damaged property, but for not more than the period of time that final completion of the project is delayed. This period of time will not be limited by the expiration date of the policy.

20. The Builder's Risk Policy's declarations page provides "'Soft Costs' Coverage" limits of insurance of $7,909,885, subject to a waiting period of five (5) days.

21. The Builder's Risk Policy's "Soft Costs" Endorsement states as follows regarding the waiting period:

> **5. Waiting Period**
>
> We will pay only if the delay in completion of "construction operations" exceeds the projected completion date by the amount of Waiting Period indicated in the "Declarations." We will pay only those covered "Soft Costs" expenses that you incur after the Waiting Period ends.
>
> The Waiting Period begins when the "construction operations" described in the "Declarations" would have ended had there been no "loss" under your Builders Risk Coverage Form.

22. The Builder's Risk Policy's "Soft Costs" Endorsement further provides the following schedule of covered expenses:

> ☒ Interest expenses on money you borrow to finance construction or Real Estate and Property Tax assessments;
>
> ☒ Advertising and Promotional expenses;
>
> ☒ Insurance expenses;
>
> ☒ Architectural fees, building inspection and permit fees and charges;
>
> ☒ Commissions, legal and accounting costs and fees and administrative expenses incurred as a result of a necessary re-negotiation of a lease or leases;

23. The Builder's Risk Policy's "Soft Costs" Endorsement defines "Construction Operations" to "mean[] the construction, installation, erection or fabrication of the structure described in the Declarations."

**The Loss**

24. Upon information and belief, a salesperson visiting the Premises discovered water leaking from the ceilings at the Premises on or about March 5, 2017.

25. Upon information and belief, representatives of the Insureds traced the source of the water to two failed water valves located in a penthouse unit on the 11th floor of the Premises.

26. Upon information and belief, a temporary plastic sheeting covering a window opening in the 11th floor penthouse unit failed, causing the outdoor elements to enter the Premises.

27. Upon information and belief, below freezing temperatures outside the Premises entered through the uncovered window opening in the 11th floor, overwhelming the heating capacity of the building in that area.

28. Upon information and belief, the two failed water valves located in the 11th floor penthouse unit failed due to freezing conditions, resulting in a discharge of water.

29. On or about March 7, 2017, the Insured's representatives reported to Harleysville that a freeze-up water loss was discovered at the Premises on March 5, 2017.

30. Harleysville assigned the loss claim number 775636-GE.

31. Harleysville then proceeded to conduct a prompt, thorough and timely investigation of the reported loss.

32. Harleysville's investigation determined that two failed water valves in the 11th floor penthouse as the source water release.

33. Harleysville's investigation further determined that freezing conditions in the interior of the Premises caused the aforementioned water valves to freeze and consequently fail.

34. Harleysville's investigation further identified water damage of varying degrees to units located below the 11th floor penthouse, all the way to the ground level.

**Adjustment of the Insureds' Claim for Property Damage**

35. Based upon its inspection of the Premises Harleysville determined that the Builder's Risk Policy affords coverage for the property damage to the Premises resulting from the water damage loss that occurred on or about March 5, 2017.

36. Harleysville promptly issued multiple advance payments to the Insureds while it undertook the adjustment process to determine the total amount of covered property damage.

37. Harleysville retained the services of J.S. Held, a New York based construction consultant, to assist with the adjustment of the property damage portion of the claim.

38. Harleysville issued an initial advance payment of $10,000 to the Insureds on or about March 7, 2017 towards the property damage portion of the claim.

39. Harleysville issued a second advance payment of $200,000 to the Insureds on or about March 23, 2017 towards the property damage portion of the claim.

40. Harleysville issued a third advance payment of $200,000 to the Insureds on April 14, 2017 (reissued on April 28, 2017 due to a change in the mortgagee) towards the property damage portion of the claim.

41. Harleysville issued a fourth advance payment of $200,000 to American Fire Restoration, LLC (the emergency restoration contractor) at the request and direction of the Insureds on May 31, 2017, towards the property damage portion of the claim.

42. Harleysville and the Insureds reached an agreement regarding the value of the emergency restoration services component of the property damage portion of the claim performed by American Fire Restoration, LLC in the amount of $227,513.27, on June 17, 2017.

43. On June 17, 2017, pursuant to the direction of the Insureds, Harleysville issued payment in the amount of $27,513.16 to American Fire Restoration, LLC which, along with the prior advance payments, brought the total amount paid for emergency restoration services component of the property damage portion of the claim to $227,513.16.

44. Harleysville completed its adjustment of the property damage portion of the loss, and set the undisputed actual cash value (ACV) of the loss at $1,219,882.35 on September 12, 2017,

45. On September 12, 2017, Harleysville promptly issued payment to the Insureds in the amount of $809,882.35 which, along with the prior advance payments, brought the total amount of payments made towards the building damage portion of the claim equal to the undisputed ACV of the loss, including emergency restoration, of $1,447,395.51.

**Adjustment of the Insureds' Claim for Soft Costs**

46. Pursuant to the Builder's Risk Policy, coverage for soft costs is only available where the insured can establish a period of construction delay in the overall final completion of the construction project that is directly caused by covered property damage.

47. Since there may be other independent factors which may delay the overall final completion of a construction project, not all covered property damage will directly result in a period of construction delay in the overall final completion of the construction project.

48. Accordingly, in order to qualify for soft costs coverage an insured must provide sufficient information regarding the construction project so that the impact of covered building damage on the overall construction project, if any, can be properly assessed.

49. On or about March 27, 2017, Harleysville contacted the Insureds' representatives regarding a preliminary request for documents and information pertaining to the Insureds' potential soft costs claim. Among other things, Harleysville requested the following information:

a. For each impacted unit, the pre-loss construction/renovation schedule detailing the original projected completion dates.

b. For each impacted unit, the revised construction/renovation schedule detailing the post-loss projected completion dates.

c. Documentation detailing any soft cost incurred for interest expenses incurred on any construction loans, additional real estate and property tax assessments, advertising and promotional expenses, etc.

d. For each impacted unit, copy of the budgeted and/or forecasted construction renovation costs as well as documentation detailing the construction costs incurred as of the date of loss.

e. Copies of any pre-loss budgets/forecasts, detailing the sales and/or lease of the impacted units.

f. Complete copy of your soft cost and business income loss claim and support documentation.

50. Shortly thereafter, Harleysville retained the services of J.S. Held to assist with the calculation of the period of time that the final completion of the project was delayed by the subject loss, if any.

51. J.S. Held issued a more comprehensive Request for Information ("RFI"), dated April 11, 2017, to the Insureds requesting various categories of documents and information pertaining to the construction project and the adjustment of the Insureds' claim for soft costs.

52. On or about July 24, 2017, the Insureds submitted a claim for soft cost expenses in the amount of $3,754,200.

53. While the Insureds provided limited documentation contemporaneously with their July 24, 2017 claim submission, the Insureds did not provide any of the information previously requested by Harleysville or its consultant.

54. On or about October 2, 2017, the Insureds submitted a revised claim for soft cost expenses in the amount of $5,956,067.

55. On or about August 8, 2018, the Insureds submitted a further revised claim for soft cost expenses in the amount of $5,880,621.

56. Throughout the course of Harleysville's adjustment of the Insureds' claim for soft cost expenses, J.S. Held updated its RFIs along with a document tracking matrix, which indexed all of the documents produced by or on behalf of the Insureds.

57. Despite multiple in-person meetings and multiple exchanges of correspondence, the Insureds failed to provide the overwhelming majority of the relevant information and documents necessary to properly evaluate and adjust their claim for soft costs.

58. In some instances, the Insureds refused to provide whole categories of requested information and documentation to Harleysville.

59. At the request of Harleysville, J.S. Held issued a report outlining its findings regarding the period of construction delay attributable directly to the covered property damage.

60. In a detailed 31 page report dated September 7, 2018, J.S. Held opined that based upon all of the documentation and information provided to date, it could not establish whether or not the construction project sustained any period of construction delay as a direct result of the March 5, 2017 water loss. A true and correct copy of the J.S. Held report, dated September 7, 2018, is attached hereto and incorporated herein by reference as **Exhibit 2.**

61. In relevant part, J.S. Held estimated that it should have taken between 116 and 172 days to complete the repairs to the covered property damage arising out of the loss that occurred on March 5, 2017.

62. J.S. Held further determined that the date of final completion and occupancy did not occur until June 8, 2018, a period of 460 days from the date of loss on March 5, 2017.

63. Accordingly, there are multiple independent and unrelated causes in the overall delay of the construction project.

64. As such, and based upon the information and documentation available to Harleysville, J.S. Held did not find that the subject loss resulted in an overall delay of the construction project.

65. Harleysville provided the Insureds and their public adjuster a copy of J.S. Held's report regarding the period of construction delay, dated September 7, 2018, under a cover letter dated September 7, 2018.

66. Additional in-person meetings and exchanges of correspondence since September 7, 2018 have not resolved the deficiencies in the information and documentation provided by the Insureds, as they continue to fail to provide the relevant data necessary for Harleysville to properly evaluate and adjust the claim for soft cost expenses.

**COUNT I – DECLARATORY JUDGMENT**

67. Harleysville incorporates the averments set forth in the preceding paragraphs of its Complaint as if set forth at length here.

68. Harleysville's investigation and adjustment of the Insureds' claim for property damage as a result of the March 5, 2017 water loss concluded that the Insureds' suffered covered property damage in the amount of $1,447,395.51.

69. Harleysville's investigation and adjustment of the Insureds' claim for soft costs further found that, based on the limited information provided, there was no delay in the projected completion of overall construction operations as a direct result of the covered property damage.

70. Accordingly, based upon the prevailing facts as established by the Insured's *de minimis* production of documents and information, the Insureds' claim for soft costs does not qualify for coverage under the Builders' Risk Policy.

71. Harleysville is entitled to a declaration that the Builder's Risk Policy does not insure the purported soft costs for which the Insureds' seek coverage.

WHEREFORE, Harleysville Insurance Company of New York respectfully requests that this Honorable Court enter judgment in its favor and against Defendants 12 East 88th LLC and Simon Baron Construction LLC, together with any additional relief the Court deems appropriate, and enter a judgment in favor of Harleysville declaring:

(1) that the Insureds' claim for soft costs expenses resulting from the loss at the Premises that occurred on or about March 5, 2017; and

(2) that Harleysville is entitled to such other relief that the Court may deem just and appropriate, including but not limited to attorneys' fees and costs.

Respectfully submitted this 27th day of December, 2018,

GOLDBERG SEGALLA LLP

BY: s/______________________________
Steven P. Nassi, Esq. (PN5216)
snassi@golbergsegalla.com
Robert F. McCarthy, Esq. (RM9676)
rmccarthy@golbergsegalla.com
Mailing Address:
P.O. Box 780, Buffalo, NY 14201
Office Location:
200 Garden City Plaza, Suite 520
Garden City, NY 11530-3203
Tel: (516) 281-9800
Fax: (516) 281-9801

*Attorneys for Plaintiff Harleysville Insurance Company of New York*